## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOVEL ORTEGA, | ) | Chapter 7 |
| | ) | Case No. 17-40675-EDK |
| Debtor | ) | |
| | ) | |
| | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 17-4055 |
| v. | ) | |
| | ) | |
| | ) | |
| HOMAYOUN MAALI, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## <u>MEMORANDUM OF DECISION</u>

Before the Court after trial is a complaint (the "Complaint") filed by the United States

trustee (the "Trustee") against Homayoun Maali ( "Maali") seeking fines, sanctions, and injunctive

relief for repeatedly violating § 110 of the United States Bankruptcy Code[1] and engaging in the

unauthorized practice of law.  In addition to statutory fines and penalties, the Trustee seeks an

order permanently enjoining Maali from acting as a bankruptcy petition preparer and from

soliciting, assisting, or giving advice of any kind to any person in connection with a bankruptcy

case.  Pursuant to Bankruptcy Rule 7052, the following constitute the Court's findings of fact and

---

[1] *See* 11 U.S.C. §§ 101 *et seq.*  All references to statutory sections are to the United States Bankruptcy Code
(the "Bankruptcy Code" or the "Code.").  All references to "Rules" or "Bankruptcy Rule" are to the Federal
Rules of Bankruptcy Procedure.

conclusions of law.

## I.    FACTS AND TRAVEL OF THE CASE

### A.  The Adversary Proceeding

On October 24, 2017, the Trustee commenced this adversary proceeding by filing the two count Complaint. Through Count I, the Trustee seeks sanctions for Maali's various alleged violations of § 110 of the Code, and in Count II the Trustee asks that Maali be enjoined from acting as a bankruptcy petition preparer.  On December 14, 2017 the Defendant filed a *pro se* voluntary Chapter 13 petition of his own,[2] which stayed Count I (monetary sanctions).  While that case was eventually dismissed on September 26, 2018, Maali filed another chapter 13 case, again *pro se*, on April 23, 2019,[3] which again stayed Count I of the Complaint, but the Court found that Count II of the Complaint (injunctive relief) was excepted from the automatic stay as an exercise of the Trustee's police and regulatory powers, *see* 11 U.S.C. § 362(b)(4).

Finally, after numerous discovery deadline extensions, two federal government shutdowns, resolution of Maali's numerous interlocutory appeals and discovery disputes, a two-day trial was held on April 30 and May 1, 2019.  Five witnesses testified – Maali, John M. Doherty ("Doherty"), Jovel Ortega ("Ortega"), Rosalie Davis ("Davis"), and Kevin Brouillard ("Brouillard").  At the conclusion of the trial, the parties were given an opportunity to submit post-trial briefs.  After several extensions of the deadline were filed and granted, both parties submitted additional briefs and the matter was taken under advisement.   Meanwhile, the automatic stay as to Count I of the Complaint had expired and, at Maali's request and with the assent of the Trustee, Count I was also

---

[2] Case number 17-42208-EDK.

[3] Case number 19-40652-EDK.

taken under advisement, as the Court concluded that no additional testimony was required or warranted given that the operative facts were identical in ruling on both counts.

The testimony provided by Ortega, Davis, Brouillard, and Doherty was credible, forthright, and consistent regarding their interactions with Maali. In contrast, Maali's testimony was largely not credible – riddled with denials of obvious truths and feigned memory lapses.[4]  On the whole, the Court found that much of Maali's testimony regarding his interactions with the trial witnesses was largely contrived, either before trial or on the spot, to avoid the potential ramifications of his conduct.

The following findings of fact are based on trial testimony, the admitted evidence, and the Court's own records.  *See Currie v. Wells Fargo Bank, N.A. (In re Currie)*, Slip Copy, Bankr. No. 11-17349-JNF, Adv. No. 12-1009, 2013 WL 1305805, *1 n.1 (Bankr. D. Mass. March 28, 2013) ("The Court may take judicial notice of the documents in the debtor's file and those in the Court's own records.").

**B.  Jovel Ortega**

In early 2017, Jovel Ortega ("Ortega"), a resident of Lawrence, Massachusetts, had been

---

[4] For instance, when questioned by the Trustee as to his awareness of a preliminary injunction being issued against him in the Massachusetts Superior Court, Maali initially testified vociferously that he did not receive a copy of the injunction, nor did he appeal that order.  It was only after the Trustee read the Superior Court injunction out loud in court, a certified copy of the injunction was admitted into evidence, and the Court overruled Maali's continuous objections and instructed him to respond that Maali admitted that he had in fact received a copy of the Superior Court injunction, which he himself had appealed.  Maali was also unable to recall the substance of discussions at the 341 Meeting held in his own case less than 9 months earlier after his objections to questions regarding that meeting were overruled, even after being provided relevant portions of the meeting transcript.  When asked whether he was aware of any court dates scheduled for the near future or whether he had been ordered to appear before any court, Maali testified that he could not recall and then denied knowing that he was scheduled to be arraigned in the Massachusetts Superior Court the following week, all after the Court overruled his objections to that line of questioning. And finally, when confronted with his own prior testimony and other evidence contradicting his statements at trial, the Defendant appeared to develop memory recollection issues, despite being otherwise confident in answering questions that were either innocuous or to his benefit.

contemplating seeking bankruptcy relief for more than a year when, in the course of his employment as a vehicle salesman, Ortega learned that a repeat customer had filed for bankruptcy. Overcoming his reluctance to pursue a bankruptcy filing, Ortega asked the customer to provide the name and phone number of the individual who assisted the customer with their bankruptcy case. The customer identified the individual who had helped with the filing as "Papa"[5] and provided Ortega with a phone number. Upon calling, Ortega spoke with an individual who identified himself as "Papa" (whom Ortega identified as Maali) and instructed Ortega to bring his bills and all creditor information to a Staples store in Salem, New Hampshire, so that he could help Ortega file a bankruptcy case. At their initial meeting, Maali, who is not a licensed attorney, explained the difference between a chapter 7 and chapter 13 bankruptcy case, advised Ortega that he should file under chapter 7, and indicated that he needed Ortega's signature on the blank bankruptcy schedules and statements and would then complete the paperwork on Ortega's behalf.

Finding Maali's demeanor to be professional and in light of the customer's referral, Ortega entrusted Maali to assist him with a bankruptcy filing. Consequently, Ortega signed the blank bankruptcy documents and paid Maali $1,200 in cash, and Maali provided him with a receipt. At trial, Maali denied having acted as a bankruptcy petition preparer on Ortega's behalf. When confronting Ortega regarding the receipt for the $1,200 paid to him, Maali implied that the receipt was for the repayment of a loan made by Ortega's father. The Court did not find Maali's testimony credible and finds that Ortega paid Maali $1,200 to prepare and file his bankruptcy documents.

A review of the bankruptcy documents filed on Ortega's behalf corroborates his testimony that he signed the documents in blank and did not review them prior to filing. For instance, on pages 2-5 of the voluntary petition filed in each of his bankruptcy cases, Ortega's surname is

---

[5] The trial transcript uses the alternate spellings of "Poppa" and "Papa." For the sake of consistency, the Court will use the spelling "Papa" for references to both "Poppa" and "Papa".

spelled incorrectly and the dates next to his signatures were entered by someone other than himself. Ortega explained that he writes the number 7 in the "European" style which uses a dash through the stem of the numeral, which is evident on later documents filed with the assistance of Attorney Kurland, where Ortega signed and dated the documents himself using the European style 7.   And the Court found Ortega's testimony credible that the handwritten information on the documents (other than his signature) was entered by someone other than himself.

In addition, Ortega credibly testified that he never personally took the required credit counseling course, despite the fact that a credit counseling course certificate in Ortega's name was filed in two separate cases. The Court finds that Maali, and not Ortega, paid for and took the credit counseling course on Ortega's behalf.  Maali denied as much, but his testimony was riddled with inconsistencies.  At one point, Maali testified that he had allowed other individuals to use either his credit card or prepaid card to pay for a credit counseling course, but later denied even owning a credit card or allowing anyone else to use the prepaid card that he admitted having.  Even after being confronted with testimony from his own meeting of creditors required by § 341 of the Code, ("341 Meeting") held on August 31, 2018, in which he admitted to allowing his credit card or prepaid card account to be used to pay another individual's credit counseling course, Maali continued to deny at trial that he had done so.

Maali caused to be mailed a voluntary Chapter 7 bankruptcy petition on behalf of Ortega that was received by the bankruptcy court clerk's office (the "clerk's office") on March 27, 2017 (the "First Ortega Case").[6]  The petition, which indicated that Ortega was filing the case *pro se*, was accompanied by a creditor matrix, verification of matrix, certificate of credit counseling, statement of social security number, application to pay filing fee in installments, and an initial

---

[6] Case number 17-40527-EDK.

payment of $112 toward the filing fee. None of the documents were accompanied by a petition preparer certification or contained Maali's signature, name, address, or Social Security number. Nor was a "Bankruptcy Petition Preparer's Notice, Declaration, and Signature" (Official Form 119) filed in the case. Ortega did not review the completed bankruptcy documents before they were filed with the Court and received no copies of the documents.

The 341 Meeting in the First Ortega Case was scheduled for April 26, 2017. However, because the missing schedules and statements were not timely filed, the case was dismissed on April 11, 2017. Upon receiving notice that the case had been dismissed, Ortega contacted Maali. Maali assured Ortega that he was taking care of the situation and that Ortega need not worry about anything. Maali then told Ortega about his upcoming 341 Meeting, but stated that the meeting was scheduled for May 15, 2017, instead of April 26, 2017.

Maali was correct that there was, indeed, a 341 Meeting scheduled for May 15, 2017. Unbeknownst to Ortega, Maali caused to be mailed a second voluntary chapter 7 petition on Ortega's behalf that was received by the clerk's office on April 13, 2017 (the "Second Ortega Case").[7] The petition in the second case was accompanied by all required bankruptcy schedules and statements, the creditor matrix, a certificate of credit counseling, a statement of Social Security number, an application to pay the filing fee in installments (together the "bankruptcy documents"), and a $120 payment toward the filing fee. The bankruptcy documents again indicated that Ortega was acting *pro se* and noted that Ortega had filed a prior bankruptcy case in March 2017. As in the First Ortega Case, the bankruptcy documents indicated that Ortega had not paid or agreed to pay anyone for assistance in preparing his bankruptcy documents, was not accompanied by a petition preparer certification or Official Form 119, and did not contain Maali's name anywhere

---

[7] Case number 17-40675-EDK.

in the documents.  And, again, Ortega was not given an opportunity to review the bankruptcy documents, nor were copies of the documents provided to him.

Prior to the 341 Meeting in the Second Ortega Case, John M. Doherty, a bankruptcy analyst with the United States Trustee's Office ("Doherty"), had been noticing similarities in numerous cases filed by allegedly *pro se* debtors residing in the Lawrence, Massachusetts area and had begun selecting some of those cases for further investigation.  In that vein, Doherty attended the May 2017 341 Meeting.  At the meeting, when questioned whether he had assistance in filing the case, Ortega, acting on Maali's prior instructions, initially denied receiving any help in preparing his bankruptcy documents and said that he obtained bankruptcy information from the internet.  When the chapter 7 trustee, Anne White ("White") then inquired about his first case, Ortega became confused.  Because he was unaware that two cases had been filed, Ortega was unable to answer questions regarding the documents filed in and the dismissal of that case.   When White pointed out that the current voluntary petition listed the First Ortega Case, Ortega then admitted that he had paid an individual he knew only as "Papa" $1,200 for assistance with preparing his bankruptcy documents.  When he was later shown a picture of Maali, Ortega identified Maali as the "Papa" who had completed and filed his bankruptcy documents.

After the 341 Meeting, in June 2017, Attorney Jon Kurland ("Kurland") filed a Notice of Appearance on Ortega's behalf, together with amended schedules and statements and a disclosure of compensation indicating that Ortega paid Kurland $1,000 for representation.  Ortega received his discharge on September 26, 2017.

### C.  Rosalee Davis

Rosalee Davis ("Davis"), also a resident of Lawrence, Massachusetts, first met Maali

(whom she knew as "Ahmed"[8]) sometime around January 2015 after being referred to him while she was experiencing financial problems. Per Maali's instructions, Davis provided Maali all of her bills and an initial payment of $1,600 to assist her with filing a chapter 7 bankruptcy case. Davis completed her own credit counseling course online and then Maali filed her chapter 7 case in January 2015. While the documents indicated that Davis filed the Chapter 7 case *pro se*, she testified, and the Court finds credible, that Maali filed the chapter 7 case on Davis's behalf.

Sometime between 2015 and 2017 Davis received a foreclosure notice regarding her home and called Maali, who told Davis that he could resolve her problem by filing a chapter 13 case for her. Davis made an initial payment of $600 and a subsequent payment of at least $900 to Maali to do so, both in cash as Maali required. At trial, Maali denied that he received any payment from Davis, noting that Davis was unable to produce a receipt. Maali further challenged Davis's claim to have paid him in cash based on her testimony that she pays all her bills by check. However, the Court finds credible Davis's adamant and consistent testimony that she paid Maali in cash because he insisted that she do so. Maali then met with Davis in her home and had her sign the required bankruptcy documents in blank. Just as he had instructed Ortega, Maali told Davis to not tell anyone that he had assisted her with the case and to say that she obtained information via the internet if questioned.

Maali caused to be mailed a voluntary Chapter 13 bankruptcy petition, creditor matrix, verification of matrix, certificate of credit counseling dated January 7, 2015, statement of social security number, and the $310 filing fee on Davis's behalf that the clerk's office received on November 13, 2017 (the "First Davis Case").[9] The documents indicated that Davis was filing the case *pro se* and were not accompanied by a petition preparer certification or Official Form 119.

---

[8] At trial, Davis identified Maali as the individual she knew as "Ahmed."
[9] Case number 17-42026-CJP.

Davis did not review the documents prior to filing and did not receive copies of the filed documents.

The Court issued an order requiring Davis to file various documents by November 27, 2017, including a more recent credit counseling certificate. Maali then filed a motion to extend time to file the documents. Davis testified that although her signature appears on the motion, she did not herself prepare it. The Court responded with a separate order explaining that the credit counseling certificate filed with the petition was invalid since it was obtained more than 180 days prior to the petition date, and gave Davis 5 days to file a certified request for additional time to file a new credit counseling certificate or the case would be dismissed. After Davis failed to file either a valid credit counseling certificate or a certified request for additional time to do so, the Court dismissed the case.

After learning that her case had been dismissed, Davis called Maali, who told her that she need not worry and explained that he could take care of the situation. Although Maali had mentioned he could file a new chapter 13 case, Davis did not meet with Maali to sign any new documents for a second case. However, without Davis's knowledge or authorization, Maali caused to be mailed a voluntary chapter 13 bankruptcy petition, creditor matrix, verification of matrix, and statement of social security number on Davis's behalf, none of which were signed by Davis, that the clerk's office received on December 26, 2017 (the "Second Davis Case").[10] The $310 filing fee and a certificate of credit counseling in Davis's name dated December 22, 2017 were included with the mailed documents. Again, the documents indicated that Davis was proceeding *pro se* and were not accompanied by a petition preparer certification, Maali's name, address and social security number, or Official Form 119.

---

[10] Case number 17-42287-CJP.

In the meantime, unaware that the Second Davis Case had been filed, Davis was told that Maali had been arrested and she assumed he would not be filing a new case for her. Concerned that her house would soon be sold via foreclosure, Davis met with Attorney Joshua Burnett ("Attorney Burnett") and Attorney Jeffrey Kitaeff ("Attorney Kitaeff") on December 27, 2017. At that meeting, Davis learned for the first time that the second chapter 13 case had been filed in her name. Davis retained Attorneys Burnett and Kitaeff for a fee of $4,000. An emergency motion to dismiss the Second Davis Case was filed, which was granted on January 16, 2018. After completing a credit counseling course on her own, Attorney Kitaeff filed a new chapter 13 case on Davis's behalf. In her bankruptcy documents filed in that case, Davis listed various claims against Maali, including one for compensation related to a civil action filed in her name, without her knowledge or authorization, in the United States District Court, District of Massachusetts against the law firm handling foreclosure of her home.

The Court finds that a review of the bankruptcy documents in the Second Davis Case supports her contention that the case was filed without her knowledge or authorization. While she recognized her signature on the voluntary petition, verification of matrix, and the motion to extend time to file documents in the First Davis Case, she testified that neither her signature or handwriting appears on any page of the voluntary petition or the verification of matrix filed in the Second Case. As with the Ortega cases, the Court notes that Davis's first name is incorrectly spelled on the top of pages 2-5 of the petition filed in the Second Davis Case. And as occurred with Ortega, a credit counseling certificate for a course Davis did not take was issued in her name and filed in a case that she did not authorize.

### D. Kevin Brouillard

Threatened with foreclosure on his residence located in Lawrence, Massachusetts, Kevin

Brouillard ("Brouillard") was referred to Maali (known to him as "Haman") by a friend's sister who had previously obtained services from Maali.   Brouillard and Maali met at Brouillard's home, where Brouillard explained his financial situation and asked Maali how to delay further action by the mortgage lender while attempting to modify his mortgage loan. Maali advised Brouillard that, for a fee of $1,800 (to be paid in cash), he could provide him respite from all creditors for about eight months by a bankruptcy filing.  He also advised Brouillard not to pay his mortgage lender.  Maali explained that the mortgage lender may pursue foreclosure again after eight months, but that Brouillard could then file another bankruptcy case. Brouillard made an initial payment of $500 and eventually paid the full requested fee to Maali in cash.   Brouillard requested receipts for his cash payments to which Maali responded with only excuses rather than evidence of payments.  Maali presented primarily blank bankruptcy documents to Brouillard for his signature and explained that Maali would then go home and complete the documents.  He also explained that the filing fee for the case would be paid out of the $1,800 Brouillard had paid him.

Maali caused to be mailed a voluntary chapter 7 bankruptcy petition, creditor matrix, verification of matrix, certificate of credit counseling, statement of social security number, application to pay filing fee in installments, and an initial payment of $120 toward the filing fee on Brouillard's behalf that the clerk's office received on October 25, 2017.[11]   On November 8, 2017, the remaining bankruptcy schedules and statements were filed.  The documents indicated that Brouillard was acting *pro se* in the case and were not accompanied by a petition preparer certification or Official Form 119 and nowhere contained Maali's signature, name, address, or Social Security number.  Brouillard did not review the bankruptcy documents before they were filed nor did he receive copies of the documents.  The Court finds credible Brouillard's testimony

---

[11] Case number 17-41912-EDK.

that he neither filled out nor dated the bankruptcy documents.

The Court issued a notice setting the 341 Meeting for December 4, 2017 and sent a notice of the requirement to complete a financial management course. Brouillard received those notices and, as Maali had instructed him to do, called Maali for further instruction. Maali assured Brouillard that he did not need to attend the "court proceeding" or take a financial course. The Defendant told Brouillard that he had taken the course himself for other clients. Brouillard did not take the financial management course and did not attend the 341 Meeting. Thereafter, the case was dismissed on motion filed by the chapter 7 trustee after he failed to attend his scheduled 341 Meeting or contact the trustee to explain his absence.

Approximately seven or eight months had passed when Brouillard received a letter in the mail indicating that his bankruptcy case had been dismissed and his mortgage lender was proceeding with a foreclosure sale. Brouillard then contacted Maali again. Maali told Brouillard that they would have to file another bankruptcy case, but the fee would be higher. At this juncture, Brouillard told Maali that he needed time to consider the proposed strategy. Thereafter, Brouillard consulted bankruptcy attorney Freya Shoffner ("Attorney Shofner") and refused to answer or return Maali's approximately 20 phone calls to him. Brouillard subsequently filed a chapter 13 bankruptcy case represented by Attorney Shoffner.


## II. POSITION OF THE PARTIES

The Trustee maintains that Maali, acting as an undisclosed paid petition preparer, First-violated numerous sections of § 110 by, *inter alia*:

1. paying filing fees on behalf of debtors,

2. failing to disclose his role as a petition preparer,

3.  failing to sign and print his name and address on documents he prepared,

4.  failing to provide debtors with and file Official Form 119 with the documents he prepared,

5.  failing to include his social security number on documents he prepared,

6.  failing to provide debtors with copies of documents he prepared, and

7.  failing to disclose fees he received; and

Second- engaged in the unauthorized practice of law.  On account of those acts, the Trustee says, (1) the Court should impose the maximum sanction of $500 for each violation of the provisions of § 110, to be tripled on account of Maali's failure to disclose that he was acting as a petition preparer, (2) Maali should be ordered to disgorge all fees received from Ortega, and (3) Maali should be enjoined from further acting as a bankruptcy petition preparer.

As noted earlier, Maali's defense is simple – although admitting knowing each of the debtors, he denies that he ever acted as a petition preparer at all or received funds for assistance with completing bankruptcy petitions.   He emphasized during the trial that his name does not appear on any of the documents filed in the Ortega, Davis, or Brouillard cases, and notes that neither Davis nor Brouillard produced receipts of payments to him at trial.  Maali appeared to insinuate that online public access to bankruptcy forms and the debtors' subsequent retention of licensed attorneys should further corroborate his denial that he has acted as petition preparer or provided legal advice.  Maali staunchly denied any involvement with a bankruptcy case other than his own, instead alleging that the Trustee filed the Complaint solely on the basis of prejudice against him as a minority.[12]

## III.  DISCUSSION

---

[12] Maali's counterclaim against the United States trustee alleging discrimination and seeking relief under federal criminal statutes was dismissed by order dated February 26, 2018.

## A.  Section 110: Background and Purpose

Section 110 of the Bankruptcy Code, which governs the conduct of "bankruptcy petition preparers," was enacted to protect vulnerable consumers experiencing financial distress from falling prey to non-lawyers engaged in the unauthorized practice of law by advising and assisting debtors in filing bankruptcy cases.  *See U.S. Trustee v. Burton (In re Rosario)*, 493 B.R. 292, 328 (Bankr. D. Mass. 2013).   A "bankruptcy petition preparer" is defined as "a person, other than an attorney for the debtor or an employee of such attorney . . . , who prepares for compensation a document for filing."  11 U.S.C. § 110(a)(1).  Having found that Maali is not an attorney, yet has received compensation to prepare bankruptcy documents for filing, he qualifies as a bankruptcy petition preparer and is subject to the provisions of § 110.

Section 110 explicitly sets forth conduct that is required and prohibited for bankruptcy petition preparers:

> The statute *requires* bankruptcy petition preparers to: (1) sign and identify themselves on documents prepared for filing; (2) provide clients with a prescribed notice prior to preparing any document or accepting a fee; (3) provide clients with copies of documents at the time of signing; and (4) disclose all fees received from the debtor within 1 year preceding the commencement of the case and any unpaid fees charged to the debtor.  11 U.S.C. §§ 110(b), (c), (d), (h)(2).  The statute also *prohibits* bankruptcy petition preparers from: (1) signing documents on behalf of a debtor; (2) giving legal advice; (3) using the word "legal" or similar terms in advertising or advertising under any category that uses the word "legal" or a similar term; and (4) collecting or receiving payment from or on the debtor's behalf for filing fees.  11 U.S.C. §§ 110(e), (f), (g).  Violations of § 110 may warrant the disgorgement of all or part of a petition preparer's fee, the assessment of fines and sanctions, and the entry of injunctive relief.  *See* 11 U.S.C. §§ 110(h)(3)(B), (i), (j).

*Rosario*, 493 B.R. at 328.

"The 'bankruptcy petition preparer' that offers anything more than a typing, data entry, or photocopying service is in violation of 11 U.S.C. § 110."  *U.S. Trustee v. Assaf (In re Briones-Coroy),* 481 B.R. 685, 691 (Bankr. D. Colo. 2012).  As Ortega, Davis, and Brouillard credibly

14

testified, Maali offered them each a bankruptcy strategy to try to resolve their financial problems and offered his services to implement the suggested strategy. Ortega, Davis and Brouillard each credibly testified that it was Maali who completed their bankruptcy documents after having them sign blank or incomplete schedules and statements and that they did not receive copies of the documents filed on their behalf. Furthermore, each witness credibly testified that Maali (1) paid the filing fees for each of the cases, (2) took credit counseling courses in their names, and (3) instructed them to lie about his involvement in the preparation of their documents.

### B. Fines under § 110(*l*)(1)

Pursuant to § 110(*l*)(1), "[a] bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure. While the Court has discretion under this section to determine the amount of the fine per violation, *U.S. Trustee v. McIntire (In re Sanchez)*, 446 B.R. 531, 537 (Bankr. D.N.M. 2011) (citing *In re Rojero,* 399 B.R. 912, 921 (Bankr. D.N.M. 2008)), in cases in which a bankruptcy petition preparer "prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer," those fines "shall" be tripled. 11 U.S.C. § 110(*l*)(2)(D). The Trustee asks that fines be assessed against Maali on account of various § 110 violations and, because Maali failed to disclose his identity as a petition preparer, the Trustee maintains that those fines must be tripled. The Court notes that the Trustee, in his post-trial brief, argues that fines under § 110(*l*)(1) should be imposed for violations in each of the Ortega, Davis, and Brouillard cases. However, inasmuch as the Complaint itself seeks relief only with regard to the Second Ortega Case, the Court will limit the imposition of fines to the violations in that case. But, as will be noted below, the Court finds that Maali systematically engaged in many violations of § 110 in each of these cases, which violations will be considered in determining whether injunctive relief is warranted pursuant

15

to § 110(j).

1.   Section 110(b) and 110(c)(1): Identification and Declaration Requirements

Section 110(b)(1) mandates that a "bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address." 11 U.S.C. § 110(b)(1).[13]  Section 110(b)(2) requires that a bankruptcy petition preparer, prior to preparing any document for filing or accepting any fees from a debtor,  provide the debtor with a written notice informing the debtor "in simple language that a bankruptcy petition preparer is not an attorney and may not practice law or give legal advice." 11 U.S.C. § 110(b)(2)(B)(i).  That notice is contained in Official Form 119.  The form notice must be signed by the debtor and by the bankruptcy petition preparer (under penalty of perjury) and must be filed along with any document presented for filing.  11 U.S.C. § 110(b)(2)(B)(iii).  And finally, any document filed by an individual petition preparer must also contain the preparer's Social Security number.  11 U.S.C. § 110(c)(1), (2)(A).

As this Court has previously found, Maali prepared numerous documents for the testifying debtors.  In each case, when filing those documents, Maali failed to comply with §§ 110(b)(1), (b)(2), and (c)(1).[14]  Even though this is the first case brought before this Court involving Maali's conduct as a petition preparer, his steadfast and complete denial that he has acted as a petition preparer, his lack of candor before this Court, his instruction to the debtors to deny his involvement with their bankruptcy cases, and his filing bankruptcy cases without the debtors' knowledge all

---

[13] A "document for filing" is defined as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under [title 11]." 11 U.S.C. § 110(a)(2).

[14] While neither Ortega, Davis nor Brouillard testified as to whether Maali provided them a copy of Official Form 119 for their signatures, the Court takes judicial notice that no such forms were filed in any of their cases.

warrant the imposition of maximum statutory fines for his violations of § 110.

Accordingly, the Court will assess the maximum fine of $500 each for Maali's violations of §§ 110(b)(1), (b)(2), and (c)(1) in the Second Ortega Case (totaling $1,500), which must be tripled pursuant to § 110(*l*)(1) on account of Maali's failure to disclose his identity in connection with the preparation of the bankruptcy documents,[15] for a total fine of $4,500.

### 2. Section 110(d): Failure to Provide Copies of Documents

Section 110(d) requires a bankruptcy petition preparer to provide the debtor a copy of a document prepared for filing with the Court "not later than the time at which a document for filing is presented for the debtor's signature." 11 U.S.C. § 110(d).  In each of the Ortega, Davis, and Brouillard cases, Maali failed to provide a copy of the documents he filed on their behalf at the time the documents were presented for their signature – indeed, such a gesture would have been futile given that the debtors were asked to sign the forms in blank.  Accordingly, the Court will assess the maximum statutory fine of $500 for his violation of § 110(d) in the Second Ortega Case, which must be tripled pursuant to § 110(*l*)(1), for a total fine of $1,500.

### 3. Section 110(g): Collection of Court Fees from Debtor

Section 110(g) provides that "a bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition."  11 U.S.C. § 110(g).  A bankruptcy petition preparer is prohibited from taking "control" of the filing fee and determining when the bankruptcy case is commenced. *Marshall v. Bourque (In re Hartman),* 208 B.R. 768, 778 (Bankr. D. Mass. 1997) (citing *In re Green,* 197 B.R. 878, 879 (Bankr. D. Ariz. 1996)).

Ortega, Davis, and Brouillard each testified that they personally did not pay any money to

---

[15] While the Court could arguably assess a $500 for each separate "document for filing," the Court will assess only a $500 total fine in the case for each statutory violation.

the Court for filing fees.  In fact, Brouillard testified that Maali explicitly told him that the filing

fee would be paid on his behalf out of the $1,800 Brouillard paid to Maali.  The debtors' testimony,

together with the fact that the filing fees were received together with the petitions and other

documents filed when the cases were commenced, lead to no other conclusion than that Maali paid

the respective filing fees on the debtors' behalf in violation of § 110(g).  Accordingly, the Court

will assess the maximum statutory fine of $500 for his violation of § 110(g) in the Second Ortega

Case, which must be tripled pursuant to § 110(*l*)(1), for a total fine of $1,500.

### 4.  Section 110(h)(2): Disclosure of Fees

Section 110(h)(2) unequivocally requires a bankruptcy petition preparer to disclose any fee

received from the debtor within the 12 months preceding the petition date as well as any unpaid

fee as of the petition date.[16]  Inasmuch as Maali entirely denies having acted as a prepetition

preparer in any of the cases and denies that he received any funds from Ortega, Davis and

Brouillard, it unsurprising that he also failed to file Official Form 280 – the form by which a

petition preparer discloses fees as required by § 110(h)(2) – in each of the cases.  The receipt

received by Ortega easily persuades the Court that Ortega paid Maali $1,200 that was not disclosed

as required by § 110(h)(2).  And while neither Davis nor Brouillard were given physical receipts

for the fees they paid to Maali, the Court credits their testimony that fees were, indeed, paid to

Maali – fees which also were not disclosed as required by § 110(h)(2).  Accordingly, the Court

will assess the maximum statutory fine of $500 for his violation of § 110(h)(2) in the Second

Ortega Case, which must be tripled pursuant to § 110(*l*)(1), for a total fine of $1,500.

---

[16] § 110(h)(2) provides:

> A declaration under penalty of perjury by the bankruptcy petition preparer shall be filed
> together with the petition, disclosing any fee received from or on behalf of the debtor within
> 12 months immediately prior to the filing of the case, and any unpaid fee charged to the
> debtor. . . .

5.  <u>Section 110(e)(2): Legal Advice</u>

Section 110(e)(2) prohibits a bankruptcy petition preparer from offering "a potential

bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B)."

11 U.S.C. § 110(e)(2)(A).  Legal advice includes advising the debtor:

(i) whether-

(I) to file a petition under this title; or

(II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;

(ii) whether the debtor will be discharged in a case under this title;

(iii) whether the debtor will be able to retain the debtor's home, car, or other
property after commencing a case under this title;

(iv) concerning-

(I) the tax consequences of a case brought under this title; or

(II) the dischargeability of tax claims;

(v) whether the debtor may or should promise to repay debts to a creditor or enter
into a reaffirmation agreement with a creditor to reaffirm a debt;

(vi) concerning how to characterize the nature of the debtor's interests in property
or the debtor's debts, or

(vii) concerning bankruptcy procedure and rights.

11 U.S.C. § 110(e)(2)(B).

The list of activities in § 110(e)(2) that constitute legal advice is "merely illustrative of the

types of conduct that, if offered by a bankruptcy petition preparer, constitutes impermissible legal

advice." *Sanchez,* 446 B.R. at 538.  The prohibition against providing the debtor advice concerning

bankruptcy procedure and rights is wide reaching. "Virtually any exercise of discretion about what

to include or not include in the bankruptcy documents will touch upon a bankruptcy 'procedure'

or 'right.'" *In re Henneman,* 351 B.R. 143, 151 (Bankr. D. Colo. 2006).  Section 110(e)(2)(B)(vii)

essentially precludes a bankruptcy petition preparer from doing more than copying or typing information written by a prospective debtor on official bankruptcy forms. *In re Herrera,* 483 B.R. 222, 229 (Bankr. D. Colo. 2012).

In each of the debtors' cases, Maali violated § 110(e)(2) by providing legal advice on multiple occasions. First, in each case, he provided legal advice to the debtors in advising them to file a bankruptcy petition and which chapter of the Bankruptcy Code they should file under. Ortega testified that Maali explained to him that his debts would be eliminated and he would obtain a fresh start once the bankruptcy process was completed. In the Brouillard and Davis cases, Maali provided legal advice when he told Brouillard and Davis that they could delay further negative action by their mortgage lenders and obtain respite from creditors for a period of time by filing a bankruptcy case and by advising both that they should stop making mortgage payments. Maali also advised both Ortega and Brouillard that they should request authorization to pay the bankruptcy filing fee in installments.

After each of the debtors decided to file a bankruptcy petition, Maali engaged in the most egregious violations of § 110(e)(2) by completing the bankruptcy schedules and statements without direction or review by the debtors. "Simply put, a bankruptcy petition preparer 'may not assist a debtor in determining what information should be included on [bankruptcy] documents.'" *In re Monson,* 522 B.R. 340, 353 (quoting *In re Gomez,* 259 B.R. 379, 386 (Bankr. D. Colo. 2001)). Here, Maali went beyond "assisting" the debtors in completing their bankruptcy documents – he usurped the entire process, making all of the decisions as to the classification and characterization of the debtors' creditors, the valuation of property, choice of exemptions, and the appropriate completion of the means test form and determination of whether the presumption of abuse arose,[17]

---

[17] Completing the means test and determining whether the presumption arises, does not arise, or is temporarily inapplicable constitutes legal advice because it involves legal determinations concerning

among others.

Maali's violations of § 110(e)(2) did not stop with the filing of the petitions. After filing, Maali continued to provide procedural and substantive advice to each of the Debtors. He advised Davis to request additional time to file her required documents when he prepared and filed a motion on her behalf. When Brouillard contacted Maali regarding the 341 Meeting notice and financial management course requirements, Maali advised him not to attend the meeting and not to worry about taking the course. Following the dismissal of the Brouillard and Davis cases, Maali advised them both to file second cases.

In sum, the Court finds that Maali provided legal advice to Ortega, Davis, and Brouillard on innumerable occasions before, during, and after the filing of their bankruptcy cases. In the Ortega case, the Court finds that the provisions of § 110(e)(2) were violated at least 5 times, by (1) advising Ortega to file a bankruptcy petition, 11 U.S.C. § 110(e)(2)(B)(i); (2) advising Ortega to file under chapter 7, 11 U.S.C. § 110(e)(2)(B)(ii); (3) telling Ortega his debts would be discharged, 11 U.S.C. § 110(e)(2)(B)(iii); (4) advising the debtor on the characterization of his property interests and debts while completing the documents, 11 U.S.C. § 110(e)(2)(B)(vi); and (5) providing general advice on bankruptcy procedures and rights, 11 U.S.C. § 110(2)(B)(vii). Accordingly, the Court will impose the maximum statutory fine for each of the 5 violations ($2,500), which must be tripled pursuant to § 110(*l*)(1), for a total fine of $7,500.

### 6. Section 110(h)(3)(B): Disgorgement of fees

Section 110(h)(3)(B) provides that "[a]ll fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d),(e), (f), or (g)." Having found that Maali violated the

---

bankruptcy procedures and rights." *Monson,* 522 B.R. at 353.

provisions of § 110(b), (c), (d), (e), (g), and (h), the Court will order that the fees paid by Ortega

to Maali must be disgorged.  Since Ortega paid Maali $1,200, $335 of which was attributable to

the filing fee, the Court will order Maali to disgorge to Ortega the sum of $865 pursuant to 11

U.S.C. § 110(h)(3)(B).

### C.  Fines under § 110(i): Fraudulent, Unfair, or Deceptive Acts

While § 110(e)(2) prohibits bankruptcy petition preparers from offering any legal advice

to a debtor, § 110(i) goes further to restrain bankruptcy petition preparers by imposing sanctions

for "any act that the court finds to be fraudulent, unfair or deceptive."  11 U.S.C. § 110(i)(1).  "The

unauthorized practice of law by a nonattorney bankruptcy petition preparer constitutes a

fraudulent, unfair or deceptive practice within the meaning of § 110(i)(1)." *Rosario,* 493 B.R. at

338.   Petition preparers necessarily engage in the unauthorized practice of law when they make

the legal determinations required to complete the appropriate bankruptcy schedules and statements

without direction from the debtor.  *Id* at 334.   Consequently, a nonattorney's performance of the

following activities has consistently been found to constitute the unauthorized practice of law:

assisting in the completion of forms, schedules, and statements or determining where to schedule

things on forms;   characterizing property interests and classifying debts; supplying property

values; selecting exemptions for the debtor; and preparing a chapter 13 plan.  *Id* at 334-335

(citations omitted).  "And there is no question that drafting motions or responses for debtors to be

filed with the court constitutes the unauthorized practice of law." *Id.* at 335.

As described above, Maali engaged in the unauthorized practice of law throughout each of

the debtors' cases by advising them on whether, and under which chapter, to file, completing the

schedules and statements, advising them as to the effect of the bankruptcy filings, and by preparing

and filing a motion on Davis's behalf. There is no question that Maali engaged in the unauthorized

practice of law, and accordingly engaged in fraudulent, unfair, or deceptive acts in each of the cases.

Beyond engaging in the unauthorized practice of law, the Court finds that Maali engaged in fraudulent, unfair, and deceptive acts by (1) filing the Second Ortega Case and the Second Davis Case without the debtors' knowledge or authorization; (2) taking the credit counseling courses on the debtors' behalf; and (3) advising the debtors to lie about his involvement in their bankruptcy cases.

The unauthorized practice of law itself would have compelled the Court to order the disgorgement of fees (which it has already done for violations of other provisions of § 110), *see Rosario,* 493 B.R. at 339 ("The unauthorized practice of law requires the disgorgement of all fees received by the bankruptcy petition preparer, because no compensation can be lawfully awarded for such activities."). But § 110(i)(1) also "*requires* the Court to award [additional] sanctions to the debtor where it finds that a petition preparer has engaged in the unauthorized practice of law, as that practice constitutes an unfair and deceptive act. 11 U.S.C. § 110(i)(1)." *Id.* That section provides that, in the event the Court finds the petition preparer to have engaged in an unfair or deceptive act,

the court *shall* order the bankruptcy petition preparer to pay to the debtor –

(A) the debtor's actual damages;

(B) the greater of –

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorney's fees and costs in moving for damages under this subsection.

11 U.S.C. § 110(i)(1).

Here, Ortega did not allege that he had suffered actual damages and did not hire an attorney to move for damages under this subsection.  Accordingly, the Court will order Maali to pay to Ortega $2,000 pursuant to § 110(i)(1)(B).

### D.  Section 110(j): Injunctive Relief

In addition to the request that Maali be fined for his various violations of § 110, the Trustee also asks the Court to enjoin Maali from further acting as a bankruptcy petition preparer in any case.  Pursuant to 11 U.S.C. § 110(j), the Court may enjoin a bankruptcy petition preparer from engaging in particular conduct that violates § 110 or constitutes a fraudulent, unfair, or deceptive act, 11 U.S.C. § 110(j)(2)(A), *or* may entirely "enjoin the person from acting as a bankruptcy petition preparer," in any case, 11 U.S.C. § 110(j)(2)(B).[18]  "Permanent injunctive relief is

---

[18] § 110(j) provides:

(j)     (1)     A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

         (2)     (A)     In an action under paragraph (1), if the court finds that--

                 (i)     a bankruptcy petition preparer has--

                         (I)     engaged in conduct in violation of this section or of any provision of this title;

                         (II)    misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

                         (III)   engaged in any other fraudulent, unfair, or deceptive conduct; and

                 (ii)    injunctive relief is appropriate to prevent the recurrence of such conduct,

         the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

appropriate when 'merely enjoining the conduct would not be sufficient to prevent continued interference with the proper administration of the Bankruptcy Code.'" *Burton*, 493 B.R. at 353 (quoting *In re Bowyer*, 489 B.R. 798, 817 (D.N.J. 2012)). Where a bankruptcy petition preparer has continually violated § 110 or has "acted in a fraudulent, unfair, and deceptive manner, courts have held that such circumstances warrant an injunction against acting as a bankruptcy petition preparer." *Id* at 354.

As set forth in the recitation above, Maali has continually and prolifically engaged in violations of § 110, the unauthorized practice of law, and other fraudulent and deceptive acts – namely, taking credit counseling courses on behalf of debtors, filing unauthorized cases without debtors' knowledge, acting as a clandestine petition preparer without disclosure, and encouraging debtors to lie about his assistance in their cases. In addition, based on Doherty's credible testimony and the debtors' testimony that they were referred to Maali by others who had filed bankruptcy cases in the district, the Court finds it likely that Maali has acted as an undisclosed petition preparer in numerous other cases throughout the District of Massachusetts.

There is no indication that a more limited injunction would deter Maali from continuing to

---

(B)    If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.

(3)    The court, as part of its contempt power, may enjoin a bankruptcy petition preparer that has failed to comply with a previous order issued under this section. The injunction under this paragraph may be issued on the motion of the court, the trustee, or the United States trustee (or the bankruptcy administrator, if any).

. . .

11 U.S.C. § 110(j).

violate § 110 and engage in the unauthorized practice of law. Maali's wholesale denial of his involvement in these cases and his noncredible testimony during trial convince this Court that an injunction prohibiting Maali from acting as a bankruptcy petition preparer in this District is the only decent chance the Court has in curtailing Maali's continuing pattern of fraudulent, unfair, and deceptive conduct designed to illegally profit off of trusting individuals who follow his practice and advice – practice and advice tailored to conceal him from accountability while potentially leaving vulnerable debtors in a more precarious situation. Considering Maali's defense in this matter, his compliance with an injunction prohibiting the conduct that he denies engaging in should be facile and of no consequence to him.


IV.    CONCLUSION:

For all of the foregoing reasons, the Court will issue judgment for the Trustee on both Counts I and II of the Complaint. Maali will be ordered to (a) timely pay to the Trustee the fines assessed under § 110(*l*)(1) in the total amount of $16,500 and (b) provide to the Trustee, in the form of treasurer's checks or other certified funds made payable to Jovel Ortega, the total amount of $2,865 pursuant to §§ 110(h)(3)(B) and (i)(1)(B). Upon receipt, the Trustee shall distribute the funds to Ortega. The Court will further enjoin Maali, as an individual, by and through any agents, representatives, employees, associates, assignees, successors or assigns from directly or indirectly: (a) acting as a bankruptcy petition preparer as that term is defined by 11 U.S.C. § 110 and any amendments thereto; (b) engaging in any conduct in violation of section 11 U.S.C. § 110; (c) soliciting, assisting, advising, providing legal guidance, advice, assistance, or consultation of any kind to any person in connection with the filing or prosecution of any bankruptcy case in the District of Massachusetts. A separate judgment will enter forthwith.

DATED: March 6, 2020

03/06/2020

Elizabeth D. Katz
United States Bankruptcy Judge